UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL FELIPE ALEMAN, | Case No. 5:22-cv-00269-HDV-MAR |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [202]** |
| v. | |
| RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, *et al.*, | |
| Defendants. | |

## I.    INTRODUCTION

This action arises out of Plaintiff Angel Felipe Aleman's escape from custody and subsequent arrest in July 2020.  The undisputed facts are as follows.  On July 18, 2020, Plaintiff, together with five other inmates, was awaiting transport from John Benoit Detention Center to Smith Correctional Facility.  Plaintiff, whose waist was chained but whose legs were not restrained, noticed an open gate and managed to break free and run through it.  He ran in the direction of a parking structure and nearby mobile home park.  A law enforcement team—including Defendant K-9 Deputy Matthew Saidleman—was quickly dispatched to search for Plaintiff.  Several hours later, they found Plaintiff hiding in a silver truck in front of space #47 at the mobile home park.

At some point in the ensuing attempt to re-arrest him, Saidleman deployed his K-9, who bit Plaintiff in the leg.  The parties vigorously dispute whether Plaintiff was already subdued and under the control of other officers before the K-9 was unleashed, or whether he was instead still fleeing and potentially dangerous.

Plaintiff brought this suit against the Riverside County Sheriff's Department and various individual officers in February 2022.  The only claim remaining is against Saidleman under Section 1983 for excessive force in connection with the use of the dog.  Saidleman now moves for summary judgment on this claim.  Motion for Summary Judgment ("Motion") [Dkt. 202].

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  Defendant points to "objective evidence"—a limited audio recording of the incident and Plaintiff's subsequent guilty plea to resisting arrest—to counter Plaintiff's version of the facts and argue that there can be no genuine dispute.  But the audio and guilty plea are not as decisive as Defendant suggests.  Even setting aside the portion of Plaintiff's testimony that they blatantly contradict, the record still presents a triable, genuine dispute of material fact as to whether Aleman was already subdued when the K-9 was deployed.

The Motion is denied.

## II.      BACKGROUND[1]

### A.      Factual Background

On July 17, 2020, Plaintiff stole $142,000 from an armored truck.  Joint Statement of Undisputed Facts ("JSUF") ¶ 1  [Dkt. 282-2].[2]  He was arrested the same day and taken into custody at John Benoit Detention Center.  *Id.* ¶ 2.  The following day, he (together with five other inmates) was to be transported to Smith Correctional Facility.  *Id.* ¶ 3.  The inmates were chained at the waist but their legs were not restrained.  *Id.* ¶ 4.  While the inmates were being taken to a transport van, Plaintiff noticed an open gate, managed to break free, and ran through the open gate.  *Id.* ¶¶ 5–6.  He was observed to have freed one of his arms from his waist restraints and running in the direction of a parking structure and a nearby mobile home park.  *Id.* ¶¶ 7–8.

A team—including Defendant K-9 Deputy Matthew Saidleman and other K-9 law enforcement—was quickly put together to search for Plaintiff.  *Id.* ¶ 9.  They first searched the parking structure, where Plaintiff was last seen, and the nearby courthouse, but did not find him.  *Id.* ¶¶ 10–11.  They then proceeded to the mobile home park to continue the search.  *Id.* ¶ 11.  Deputies played a prerecorded message in English and Spanish over the P.A. system in the mobile home park,

---

[1] Plaintiffs submitted various objections to Defendant's evidence.  Plaintiff's Objections to Evidence Proffered in Support of Motion.  ("Objections") [Dkt. 276-10].

The guiding principle of admissibility at the summary judgment stage is whether the "contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document."  *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)).  The evidence need not actually be in an admissible form, so long as a version of it could admissibly be produced at trial.  *Id.*

"Hearsay" and other form objections are thus not particularly helpful at summary judgment, unless the evidence contains multiple levels of hearsay.  Blanket, one-word objections like "foundation" or "authentication" are also generally unhelpful because they do not provide notice of the specific ground of objection and how to cure it, and could likely be cured at trial.  *See id.* at 666–67.

To the extent the Court relies on evidence to which Defendants object, the objections are overruled, though they remain free to raise the same objections at trial.  The remaining objections are denied as moot.

[2] When the Court cites only to the JSUF, it is because the factual proposition is effectively undisputed.  Where the parties dispute a fact, the Court will cite to the underlying evidence.

warning Plaintiff that K-9 deputies were on the scene and that the dogs would be released if he did not surrender. *Id.* ¶ 12. Two search teams—with three leashed dogs among them—then searched the park. *Id.* ¶¶ 12–14. They were unable to locate Plaintiff on their first search, and regrouped at the command post. *Id.* ¶ 15.

At this point, the deputies had been searching for Plaintiff for several hours. *Id.* ¶ 17. They then received notice that a resident had reported a suspicious man hiding in her truck at space #47. *Id.* ¶ 16. Deputy Saidleman and other deputies began searching several vehicles parked there. *Id.* ¶ 17. A park resident signaled that Plaintiff was in a silver truck in front of space #47. *Id.* ¶ 18. A plainclothes deputy approached the passenger side of the truck and observed Plaintiff in the driver's seat wearing a blue shirt and a hat. *Id.* ¶¶ 19–20. The deputy drew his weapon and commanded Plaintiff to show his hands. *Id.* ¶ 22. Plaintiff "initially complied," and then opened the driver's side door in an attempt to flee. *Id.* ¶ 23. Deputy Saidleman and another officer ran toward the truck to intercept Plaintiff. *Id.* ¶¶ 25–26. Plaintiff had freed both his hands from his handcuffs. *Id.* ¶ 27.

Until this point, the parties largely agree. But from this point forward, Aleman and Saidleman hotly dispute exactly what happened and in what order.

According to Defendant, Plaintiff continued to flee. Declaration of Andrea Kornblau in Support of Motion ("Kornblau Decl.") [Dkt. 202-3], Ex. 1 ("Saidleman Incident Report") [Dkt. 211] at COR 000060–61; Declaration of Defendant Deputy Matthew Saidleman in Support of Motion ("Saidleman Decl.") [Dkt. 202-2] ¶¶ 10–12.[3] Saidleman concluded that Plaintiff was determined to flee at all costs and that a violent encounter was likely if he was not immediately apprehended.

---

[3] This is in some tension with the story as told by some of Saidleman's colleagues, who report that Plaintiff tripped and fell such that his hands were not visible, then stood back up and turned toward the deputies. Kornblau Decl., Ex. 2 ("Montalvo Incident Report") [Dkt. 211-1] at COR 000052; *id.*, Ex. 3 ("Walsh Incident Report") [Dkt. 211-2] at COR 000080 ("Aleman took a posture clearly indic[a]ting he was going to continue to flee and/or become combative."); Declaration of Deputy Montalvo in Support of Motion ("Montalvo Decl.") [Dkt. 202-4] ¶ 8; Declaration of Sergeant Michael Walsh in Support of Motion ("Walsh Decl.") [Dkt. 202-5] ¶¶ 7–8. Saidleman's incident report and declaration say nothing about Plaintiff falling, and Montalvo and Walsh's reports and declarations do not say that he continued to run after he got up.

Plaintiff disputes that he ever fell down. *See* SUF ¶ 28; Aleman Depo. at 66:3–8.

4

Saidleman Incident Report at COR 000060–61; Saidleman Decl. ¶ 12.  Saidleman deployed his police service dog, Bubba, to stop Plaintiff's flight.  Saidleman Incident Report at COR 000060–61; Montalvo Incident Report at COR 000052; Walsh Incident Report at COR 000080; Saidleman Decl. ¶ 12; Montalvo Decl. ¶ 8; Walsh Decl. ¶ 8.  Bubba apprehended Plaintiff by holding Plaintiff's left inner thigh, causing Plaintiff to fall backward.  Saidleman Incident Report at COR 000061; Saidleman Decl. ¶ 18.

Defendant maintains that this was the first physical contact between the deputies and Plaintiff.  Motion at 7; SUF ¶ 40; Kornblau Decl., Ex. 6 ("Saidleman's RFA Responses") at 10–11.  According to Defendant, Plaintiff continued to resist while the dog was on the bite.  Saidleman Incident Report at COR 000061; Walsh Incident Report at COR 000080; Saidleman Decl. ¶ 19; Walsh Decl. ¶ 9.  Plaintiff was eventually handcuffed and Bubba was thereafter removed from his hold.  Montalvo Incident Report at COR 000052; Walsh Incident Report at COR 000080; Saidleman Decl. ¶ 20; Montalvo Decl. ¶ 9; Walsh Decl. ¶ 10.

Plaintiff, on the other hand, maintains that though he initially ran away from officers, he then was chased at gunpoint and told to put his hands where officers could see them.  Declaration of Jonathan Little in Support of Opposition ("Little Decl.") [Dkt. 276-1], Ex. A ("Aleman Depo.") [Dkt. 276-2] at 25:3–5.  At that point, he "surrendered" and was "placed in handcuffs."  Aleman Depo. at 25:3–9.  Aleman maintains that he had been in custody—handcuffed, with two officers holding him—for several minutes when Saidleman released his K-9.  Aleman Depo. at 67:9–68:11; Little Decl., Ex. B ("Aleman Decl.") [Dkt. 276-3] ¶¶ 6–7, 9–10.[4]  He disputes that he was resisting at this point.  Aleman Depo. at 33:15–18; Aleman Decl. ¶¶ 12–13.  He declares that the dog initially jumped for his neck, then got a solid bite on his leg.  Aleman Decl. ¶¶ 9–10.  Aleman says he felt like the attack lasted five minutes.  *Id.* ¶ 11.  And he argues that, while he may have been moving his

---

[4] Defendant asks the Court to strike the Aleman Decl. as a sanction for submitting a previous declaration in support of his initial opposition to summary judgment in bad faith.  Motion at 1–2.  But Plaintiff's deposition testimony raises the same genuine issues as the present Aleman Decl.  It thus would not significantly change the summary judgment record to strike the Aleman Decl.  And a "district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature."  *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495 (9th Cir. 2015).

arms and legs in discomfort and pain from the dog attack, he was not resisting efforts to bring him under control.  Aleman Depo. at 33:15–18; Aleman Decl. ¶¶ 11–13.

Audio recording of the incident[5] establishes the following timeline:

| 20:30–34[6] | Officer Greg: "We're enveloping Space 47 as we speak." |
|---|---|
| 21:12–16 | Sergeant: "[H]old all traffic.  We're taking one into custody." |
| 21:18–20 | K-9 makes physical contact with Plaintiff.  K-9: "We're physical.  We're physical."  Barking is heard in background. |
| 21:21–24 | Officer: "Hey, get the dog off the bi[t]e first." |
| 21:25–26 | Dispatch: "Units are physical." |
| 21:30–35 | Officer Greg: "[I]t does appear to be our suspect still wearing waist chain."  Dog sounds are heard in background. |
| 21:55–57 | Sergeant reports suspect has been taken into custody. |
| 21:57–59 | Officer requests "medical for dog bite." |
| 22:06–08 | Officer confirms Plaintiff is in custody. |
| 22:10–12 | Sergeant: "Positive ID on the suspect." |
| 22:39–41 | Sergeant requests "medical for dog bite." |
| 27:56–28:21 | CalFire paramedics are on site and evaluating Plaintiff. |

Audio; Audio Transcript at 15–17, 20–21; *see also* SUF ¶ 47; Opp. at 6; Reply at 4.

Plaintiff was subsequently treated for his dog bite injuries—his wounds were cleaned, and he was given antibiotics and a tetanus shot.  SUF ¶¶ 48–51.  Plaintiff claims that his wounds were so severe that he nearly bled out and had to be taken to the hospital multiple times.  Aleman Depo. at 37:23–38:16; Aleman Decl. ¶ 14.  The parties dispute the lingering effects of Plaintiff's injury.  *See* SUF ¶ 52.

---

[5] The recording is of police radio traffic, so it captures only moments when someone is actively transmitting, and not all the ambient audio throughout the interaction.  There is no video evidence in the record of this interaction.

[6] Citations to audio evidence are to [minute]:[second] timestamps as reflected in the elapsed time in the audio-player software.

After Plaintiff was arrested, law enforcement continued to speak with witnesses in the trailer park where Aleman had been located and apprehended.  SUF ¶ 61; Little Decl., Exs. E-G (body worn camera recordings of three of these interactions).

Plaintiff was subsequently prosecuted for: (1) the initial theft from the armored vehicle, (2) the escape, and (3) resisting arrest.  *See* Defendant's Request for Judicial Notice in Support of Motion ("RJN") [Dkt. 202-6], Ex. B ("Third Amended Felony Complaint").[7]  With respect to the third count, Aleman was charged with:

> A violation of Penal Code section 69, a felony, in that on or about 7/17/2020, in the County of Riverside, State of California, the defendant did willfully and unlawfully attempt by means of threats and violence to deter and prevent Deputy Saidleman . . . from performing a duty imposed upon such officer by law, and did knowingly resist by the use of force and violence said executive officer in the performance of their duty.

*Id.* at 2.  On October 12, 2021, Plaintiff pled guilty to all three charges.  RJN, Ex. C ("Felony Plea Form") at 2.  The factual basis for his plea stated: "I agree that I did the things that are stated in the charges I am admitting."  *Id.*  He was sentenced to eight years and eight months as a result of his plea.  SUF ¶ 60.

### B.    Procedural History

In February 2022, Plaintiff, proceeding *pro se*, initiated this lawsuit.  Complaint [Dkt. 1]. His Second Amended Complaint stated claims for Eighth Amendment cruel and unusual punishment, negligence, municipal liability, and excessive force.  ("SAC") [Dkt. 17] at 4–8, 15–18. The sole claim to survive the Court's screening orders and the parties' motions to dismiss is Plaintiff's cause of action under 42 U.S.C. § 1983 against Saidleman for excessive force under the

---

[7] The Court grants Defendant's request for judicial notice of various orders in the state court cases. Under Federal Rule of Evidence 201, courts "may take judicial notice of matters of public record." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citation omitted).  "[C]ourt orders and filings are the type of documents that are properly noticed under the rule." *Carr v. Walmart, Inc.*, 764 F. Supp. 3d 879 (C.D. Cal. 2025) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003).  "Notice can be taken, however, 'only for the limited purpose of recognizing the "judicial act" that the order represents on the subject matter of the litigation,'" *Neilson*, 290 F. Supp. at 1113 (citation omitted); the Court may not "accept as true the facts found or alleged in such documents," *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1019 (C.D. Cal. 2017) (citation omitted).

7

Eighth Amendment.  Report and Recommendation of United States Magistrate Judge ("R&R") [Dkt. 55] at 2.

On June 23, 2025, Defendants filed the instant Motion.  Around the same time, Plaintiff finally managed to retain counsel.  *See* [Dkt. 269] at 1 & n.1.  The Court accordingly granted Plaintiff and his new counsel more time to oppose summary judgment.  *Id.* at 2–3.  The Court heard argument on the Motion on January 8, 2026, and took it under submission.  [Dkt. 285].

### III.    LEGAL STANDARD

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  A fact is material if it may affect the outcome of the case.  *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.

The burden is on the movant to establish the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet the burden of production the movant must either: (1) produce evidence negating an essential element of the nonmovant's claim or defense; or (2) show that there is an absence of evidence to support the nonmovant's case.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the movant has met this initial burden, it is up to the nonmovant to "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (citation omitted).

When reviewing the evidence at the summary judgment stage, courts do not make credibility determinations or weigh conflicting evidence—those are "jury functions."  *Liberty Lobby*, 477 U.S. at 255.  Generally, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Liberty Lobby*, 477 U.S. at 255).  Courts are not required, however, to credit testimony that is blatantly

contradicted by objective evidence (like dashcam or bodycam video or audio, photographs, taser logs, uncontradicted medical testimony, etc.)—they "may properly view the facts in the light depicted by" such objective evidence. *Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) (collecting cases applying *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). But any testimony that is *not* blatantly contradicted by such objective evidence must be considered and viewed in the light most favorable to the non-moving party. *Hughes*, 31 F.4th at 1219–20 & n.2.

## IV.     DISCUSSION

### A.     *Heck* Bar

Defendant first argues that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Motion at 9–10. The Supreme Court's decision in *Heck* bars section 1983 suits where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" unless "the conviction or sentence has already been invalidated." 512 U.S. at 487.

Defendant argues that this is such a case, since a finding that Saidleman used excessive force would impugn the validity of Plaintiff's conviction for resisting arrest, an offense which has as an element that the officer was acting lawfully (and therefore not using excessive force). Motion at 9–10. Plaintiff, on the other hand, argues that "[i]t is entirely possible that, at some point during th[e] [several] hours [of the search], Saidleman was acting lawfully and Mr. Aleman resisted him . . . and at another point, Saidleman stopped act[ing] lawfully and sicced his police K9 on an unarmed and secured Angel Aleman." Opposition at 11. Plaintiff thus argues that his success in this action would not *necessarily* impugn his guilty plea for resisting, and so the action is not *Heck*-barred. *Id.* at 9–12. Defendant responds that the charge to which Plaintiff pled guilty is too specific to permit that possibility. Reply at 6, 9–10. "Plaintiff resisted a *specific* peace officer (Saidleman) in a *specific* way (by force and violence)." *Id.* at 6 (citing Third Amended Felony Complaint; Felony Plea Form). "Plaintiff could not have [done this] from afar or while in hiding; the nature of the charge requires that Plaintiff and Saidleman were in physical proximity to each other. The parties agree that this was

9

only momentarily true . . . and that Bubba was deployed before Saidleman and Plaintiff made physical contact." *Id.* at 9.

The Court agrees with Plaintiff, at least so far as can be determined at this stage from the relevant record. The resisting arrest charge to which Plaintiff pled guilty lists the date of the conduct as "on or about" July 1**7**, 2020. Third Amended Felony Complaint. That is the date Plaintiff robbed the armored vehicle and was arrested for it,[8] not the date of Plaintiff's escape and the subsequent search and apprehension that forms the base of *this* lawsuit. The escape and dog incident was the next day, July 1**8**, 2020.[9] The parties did not brief this issue, but the Court raised it at the hearing. Defendant's response was that Plaintiff only could have resisted arrest as to deputy *Saidleman* on the date of the incident in this case, as Saidleman was not involved in his arrest the day before. But there is no evidence of that in the record. Without it, the Court cannot assume that the mistake in the charging document is the date rather than the officer named, and thus cannot assume that the guilty plea actually concerns the same events that are at issue in this action. The Court thus cannot conclude that this action is *Heck*-barred.

## B.   Merits

On the merits, Defendant argues: (1) that there is no triable issue of fact on Plaintiff's Eighth Amendment claim, since his injuries are minor and deploying a police service dog to apprehend a non-compliant suspect and restore discipline and order is proportionate, not "malicious and sadistic," Motion at 11–14;[10] (2) that Saidleman is entitled to qualified immunity, because the Ninth Circuit

---

[8] Indeed, the Third Amended Felony Complaint lists "on or about" July 17, 2020 as the date for the theft charge.

[9] Indeed, the Third Amended Felony Complaint lists "on or about" July 18, 2020 as the date of the escape charge.

[10] The parties' briefs address the excessive force issue as an Eighth Amendment violation, as the operative complaint does. *See* Motion at 4, 11–14; Opposition at 5, 13–20; Reply at 7–8; SAC at 7; *see also* R&R at 4–7. Under the Eighth Amendment, the relevant inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citation omitted). The Ninth Circuit applies a five-factor test to determine whether the use of force was malicious and sadistic, considering: "(1) the extent of injury suffered by an inmate; (2) the need for application of force;

10

has consistently approved the use of police dogs where a suspect is evading or resisting arrest, *id.* 14–16; and (3) that Plaintiff is not entitled to punitive damages, because he cannot establish the requisite evil motive, *id.* at 16–17.

The success of these arguments depends on a factual finding that Plaintiff was not apprehended before the dog was released. If Defendant's version of the facts is correct, then he is likely also correct on the law: it is (generally speaking) not excessive force to deploy a biting police dog on a suspect who is evading or resisting arrest, and for that reason qualified immunity would likely apply. *See Hughes*, 31 F.4th at 1221–23; *see also Miller v. Clark Cnty.*, 340 F.3d 959, 963–68 (9th Cir. 2003). Inversely, if Plaintiff's story is true, then Plaintiff likely prevails on the merits and on qualified immunity since it *is* (again, generally) considered excessive to allow biting after a suspect is handcuffed, "fully subdued," and "completely under control." *See Hughes*, 31 F.4th at 1222–24.[11]

---

(3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (quotation omitted).

The Court raised the possibility that a different standard might apply to Plaintiff's excessive force claim, given that he was an escapee from *pretrial* release. The Fourth Amendment's "objective reasonableness" standard "governs a free citizen's claim that law enforcement officials used excessive force." *Graham v. Connor*, 490 U.S. 386, 388 (1989). The Fourteenth Amendment's objective reasonableness standard protects pretrial detainees. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). And the Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners," *Whitley v. Albers*, 475 U.S. 312, 327 (1986), including escapees, *Hughes*, 31 F.4th at 1221. Because the Court denies Defendant summary judgment even under the more defense-friendly Eighth Amendment standard, it need not decide at this phase which standard applies. *See Hughes*, 31 F.4th at 1221 (characterizing the Fourth Amendment excessive force standard as "lower" and "more plaintiff-friendly").

[11] A similar analysis applies for punitive damages as well. To be entitled to punitive damages, Plaintiff must prove that Saidleman was "motivated by evil motive, or intent, or . . . reckless[ly] or callous[ly] indifferen[t] to [Plaintiff's] federally protected rights." *Smith v. Wade*, 461 U.S. 30, 56 (1986). The parties seem to agree that this analysis overlaps significantly with the analysis of whether Saidleman was "malicious" or "sadistic" for purposes of the Eighth Amendment claim. *See* Motion at 16–17; Opposition at 24; Reply at 10. Furthermore, if the Court grants summary judgment on the merits of Plaintiff's claims, there would be no predicate for punitive damages. But if the claims survive, then it would be premature to dismiss the request for punitive damages.

Defendant invites this Court to make that factual finding at this stage. Motion at 12–15; Reply at 2–7. But the Court cannot do so here. Plaintiff's testimony must be credited except to the extent that it is blatantly contradicted by objective evidence. *Hughes*, 31 F.4th at 1218–20 & n.2.

As already discussed, *supra* Section IV.A, Plaintiff's conviction for resisting arrest does not blatantly contradict his version of events. Between the possibility that Plaintiff may have resisted at one moment in time and Saidleman may have used excessive force at another, and the possibility that the conviction might actually refer to a different arrest on a different day, the Court cannot conclude that it forecloses Plaintiff's story.

Neither does the limited audio recording of the incident. Defendant observes that the recording has officers and sergeants reporting that Plaintiff is in custody and positively identified only after the dog is deployed. Reply at 3–4; Audio at 21:18–22:12. But this does not establish that Plaintiff was not in custody before the dog was deployed—the officers are not necessarily narrating and reporting everything *exactly* at the moment it happens.

Defendant also notes that the whole interaction is very quick. Reply at 4–5. Indeed, the audio shows that the dog is released within 45 seconds of the officers "enveloping Space 47." Audio at 20:30–21:20. It is not clear how long the dog is in physical contact with Aleman, but officers talk about getting the dog "off the bi[t]e" just a few seconds later. *Id.* at 21:21–24. Moreover, dog sounds are no longer heard after fifteen seconds, *id.* at 21:35, and medical is requested for the dog bite around 40 seconds after the dog first makes contact, *id.* at 21:57. This blatantly contradicts Plaintiff's account about the *duration* of these events—that several minutes elapsed between when he was found and when the dog was released, in which he was handcuffed and compliant, and that the dog attacked him for another several minutes. *See* Aleman Depo. at 40:9, 67:4–68:11, 91:2–10, 96:12–16, 97:16–98:6, 100:21–101:3; Aleman Decl. ¶¶ 11. There simply is not that much time between when the officers approach Aleman's location, when the dog is released, and when the interaction with the dog is over. *See Hughes*, 31 F.4th at 1217 ("The footage clearly refutes Hughes's claim that he was beaten for 'two minutes if not more,' as no more than a single minute elapses between the moment Officer Michael Rodriguez releases the dog and the moment Hughes is

taken into custody."). The Court accordingly discredits Aleman's testimony as to the duration of the events, and instead views them in the light portrayed by the audio. *See id.* at 1220.

The audio does not, however, contradict Plaintiff's account of the *order* of the relevant events. *See Hughes*, 31 F.4th at 1219 ("[W]hile the bodycam footage did blatantly disprove Hughes's claim regarding the duration of the beating, it did not blatantly disprove Hughes's claim that he was punched after he was handcuffed."). Defendant argues that it does: that the "eight seconds between the instruction to 'hold all traffic' and Saidleman's 'we're physical'" is not enough time for Plaintiff to be "apprehended, handcuffed, and standing placidly." Reply at 5 (citing Aleman Decl. ¶¶ 6–9). But the statement "[w]e're taking one into custody" (which accompanied the instruction to "hold all traffic") is quite open-ended. Audio at 21:12–16. It could be made, as Defendant appears to suggest, entirely before, or as officers are just starting to, take Plaintiff into custody. But it could also be made, as Plaintiff would have it, as officers are in the middle of, or even almost finished, taking Plaintiff into custody. The statement does not tell us how subdued Plaintiff is when it is made, or how subdued he is when the dog is released a few seconds later. *See Hughes*, 31 F.4th at 1220. And, despite counsel's argument at the hearing, there is no evidence in the record that it is impossible to handcuff someone in two to four seconds, especially when they are already wearing a waist chain. It is thus possible that Plaintiff was "in[] custody—handcuffed and with two officers holding [him]" when the K-9 was released. Aleman Decl. ¶ 7. This is a genuine dispute of material fact for trial.

The Court's conclusion here is, to a large extent, compelled by the Ninth Circuit's analysis in *Hughes*, a case very similar to this one. There, Hughes, an escaped inmate, claimed police used excessive force in violation of the Eighth Amendment in apprehending him in his house. 31 F.4th at 1215. He stated that, in response to police instruction, he announced he was coming out of hiding, then walked out with his empty "hands up in a gesture of surrender." *Id.* at 1216. At that point, he testified, officers released a dog on him and piled on top of him. *Id.* at 1216–17. Hughes claimed police punched him and allowed the K-9 to bite him for "two minutes, if not more," after he was already handcuffed and not resisting. *Id.* at 1217.

Police bodycam video and audio blatantly contradicted Hughes's testimony of his supposed

13

surrender to police and the duration of his encounter with them, and the Ninth Circuit held that the district court was correct to discredit that testimony. *Id.* at 1217, 1219. But the video and audio did "not clearly and unmistakably depict whether punches were thrown before or after Hughes was handcuffed." *Id.* at 1217, 1219–20. And the *Hughes* Court held that "the district court erred when it disregarded *all* of Hughes's testimony even though only *part* was blatantly contradicted." *Id.* at 1219.[12] Viewed "in the light most favorable to Hughes," the uncontradicted portion of his testimony created issues for the jury as to whether police continued applying force after he was handcuffed and whether that force was proportional to the threat, precluding summary judgment. *Id.* at 1220, 1222–24.

This Court comes to the same conclusion in this case. The objective evidence does not blatantly contradict—and so the Court cannot discredit—Aleman's testimony with respect to the sequence of the interaction. There is thus a genuine dispute as to whether he was handcuffed and subdued before the dog was deployed. And this fact question is incredibly material—it almost determines the outcome of the case. *Liberty Lobby, Inc.*, 477 U.S. at 248; *Hughes*, 31 F.4th at 1221–24. This dispute is for the jury, weighing the evidence and the credibility of the parties, to decide.

**V.    CONCLUSION**

For the foregoing reasons, the Motion is denied.

Dated: February 9, 2026

_____
Hernán D. Vera
United States District Judge

---

[12] "While the trier of fact may . . . decide that a witness who has lied about one material fact must be disbelieved as to all facts . . . this rule is not a binding mandate, and is certainly not to be applied by judges ruling on motions for summary judgment." *Hughes*, 31 F.4th at 1219 & n.2 (citation omitted).